UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL DEMON STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:25-cv-00203-SRC |
| | ) | |
| PEMISCOT COUNTY, MISSOURI et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Memorandum and Order</u>**

This case proves the wisdom of Lord Byron, who is credited with the maxim truth is stranger than fiction.  Stewart pleaded guilty to statutory rape.  Several years later, his defense attorney—now a judge—officiated Stewart's marriage to his victim.  The wife of the attorney-turned-judge later successfully moved to vacate Stewart's guilty plea, arguing that it "resulted in a manifest injustice."  Stewart now sues Pemiscot County and various County officials under 42 U.S.C. § 1983 alleging a wide-ranging conspiracy to cover up the terms of his plea agreement.  But for the reasons discussed below, the Court grants Defendants' motions to dismiss.

I.      **Factual background**

The Court accepts the following well-pleaded facts as true for purposes of this Memorandum and Order.  Stewart resides in Pemiscot Country, Missouri.  Doc. 1 at 1; *see* doc. 6 at 3 (incorporating certain facts from his first complaint into his current complaint).  In October 2009, Stewart pleaded guilty to first-degree statutory rape pursuant to Mo. Rev. Stat. § 566.032.  Doc. 6-1 at 25; *see Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (allowing judicial notice of judicial opinions and public records); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (allowing the Court to consider matters of public record and

exhibits attached to the complaint).  Judge William Carter—then a private attorney—negotiated Stewart's plea agreement.  Doc. 1 at 2; doc. 6-1 at 3.  Defendant Judge Fred Copeland presided. Doc. 6-1 at 3.  Defendant Michael Hazel was the prosecuting attorney.  *Id.*  The written judgment imposed four years of a suspended sentence and four years' probation, doc. 6-1 at 25, but according to Stewart "no lifetime GPS supervision appeared," in the judgment, doc. 1 at 2.

Three months later, Stewart and Probation Officer Libby Banks signed a Global Positioning Agreement that mandated compliance with its terms until 2058.  Doc. 1 at 2; doc. 6-1 at 7 (Global Positioning Agreement).  Stewart completed his term of probation in October 2013 without a violation.  Doc. 1 at 2; doc. 6-1 at 26.  A year later, Stewart's then-attorney—Daniel Cornacchione—filed a motion to discharge Stewart's lifetime supervision.  Doc. 1 at 2; doc. 6-1 at 2–5 (docket sheet).  Stewart says Judge Copeland never denied his motion.  Doc. 6-1 at 80. The Court notes, however, that Stewart previously alleged that Judge Copeland denied his motion, doc. 1 at 2, and the docket sheet attached as an exhibit to Stewart's complaint shows that Judge Copeland denied a "Motion to Set Aside."  Doc. 6-1 at 4–5.  (Because the docket is marked confidential, *see* doc. 6-1, the Court only has access to the scanned copies that Stewart attached as an exhibit.).

In 2022, Stewart was charged with violating Mo. Rev. Stat. § 575.206, "Violating a Condition [o]f Lifetime Supervision," a class D felony.  Doc. 6-1 at 20.  Judge Carter—Stewart's former plea counsel—presided over his arraignment and the next eight months of the case until February 2023 when it was transferred (without any explanation reflected in the case record) to Judge Reeves.  Doc. 6-1 at 20, 23, 71.

Stewart then claims that his public defender called him and informed him that "Judge Carter wants [him] to call his wife Kimberly, [because] she may be able to assist [him] in the

2

matter along with [the public defender]." Doc. 6-1 at 71. Stewart allegedly called Kimberly Carter the same day, and Stewart claims that she said that "Bill (William Carter) had already gotten her up to speed" and she would file a motion on his behalf. *Id*. Kimberly Carter allegedly charged Stewart $750 for her representation. *Id.* In April 2023, Kimberly Carter—Judge Carter's wife—entered an appearance on Stewart's behalf and filed a motion to withdraw his guilty plea. Doc. 1 at 2; doc. 6-1 at 5, 25–27.

In her motion, Kimberly Carter explained that Stewart "was assured by the understanding of plea counsel," her husband, Judge Carter, "and the prosecuting attorney, and based his decision to enter the plea on the fact [that] should he successfully complete supervision, the conviction would be removed from his record without further consequence." Doc. 6-1 at 26. She further stated that at the time of the offense, Stewart was 17 years old and the victim was 13 years old. *Id*. Seven years after the offense, Stewart and the victim married, *id.*; Judge Carter served as the officiant, Mot. to Dismiss at 3, 23PE-CR00726-01, *Missouri* v. *Michael D Stewart*, (Dec. 16, 2025) (containing a certified copy of Stewart's marriage certificate). Stewart and his victim, now wife, had six children together. Doc. 6-1 at 26.

Though Stewart "continued to comply with the registration requirements of his plea, a consequence of which he was aware at the time he entered his plea," Kimberly Carter stated that he "has refused to comply with the added condition of wearing a Global Positioning System unit." *Id.* Because of his refusal to comply, Stewart was charged with violating Mo. Rev. Stat. § 575.206, "Violating a Condition of Lifetime Supervision, a Class D Felony." *Id.* Kimberly Carter argued that Stewart's guilty plea "resulted in a manifest injustice because it violated his rights to due process and to the effective assistance of counsel" under the United States Constitution and the Missouri Constitution. *Id.* And she stated that "[b]ut for plea counsel's and

3

prosecuting attorney's explanations of the consequences of his guilty plea, rendering his guilty plea unknowing and involuntary, [Stewart] would not have entered a plea of guilty and would have insisted on his constitutional right to a jury trial." *Id.*

In late July 2023, Judge Keith Currie granted Stewart's motion to withdraw his guilty plea. Doc. 6-1 at 28. Judge Currie withdrew Stewart's guilty plea, vacated his conviction, removed "any requirement for registration and/or supervision as a sexual offender that may have been imposed based upon said conviction," and ordered Stewart's name removed from the Missouri Sex Offender Registry. *Id.*; *see also id.* at 30. Stewart also hired an attorney to pursue a malpractice claim against Judge Carter and contacted Kimberley Carter to "discuss a possible settlement for malpractice out of court." *Id.* at 72; *see id.* at 38–39,.

Two months later, Defendant Detective Brett Hopkins filed a probable cause statement stating that Stewart sold a single cabin—that he allegedly did not own—to two separate individuals. *See* Probable Cause Statement, 23PE-CR00726, *Missouri v. Stewart* (Sept. 12, 2023). After Stewart failed to appear for a hearing, Judge Carter issued a warrant for his arrest. *See* Warrant, 23PE-CR00726, *Missouri v. Stewart* (Oct. 12, 2023). Several months later, on March 20, 2024, Deputy Chad Nixon returned the warrant, i.e., arrested Stewart and brought him before the court. *See* Warrant, 23PE-CR00726, *Missouri v. Stewart* (Mar. 20, 2024).

A day before Deputy Nixon returned the warrant, Hopkins filed a second probable statement. *See* Probable Cause Statement, 24PE-CR00173, *Missouri v. Stewart*, (Mar. 19, 2024). Hopkins alleged that while on patrol he encountered a parked vehicle that was operated by Stewart. *See id.* To carry out the then-outstanding felony warrant, Hopkins circled the block and got behind the vehicle. *Id.* At that point, Stewart allegedly fled at a "high rate of speed." *Id.* Eventually, Stewart came to a stop and fled on foot. *Id.* Stewart's wife was in the vehicle and

4

confirmed that Stewart operated the vehicle. *Id.* Judge Carter presided over Stewart's

arraignment in each case, and Stewart's wife posted bond for him in both pending cases. *See*

Bond, 23PE-CR00726, *Missouri v. Stewart* (April 3, 2023); Bond, 24PE-CR00173, *Missouri v.*

*Stewart* (April 3, 2023). Stewart states, without any factual support, that Pemiscot County

officials, Defendants Horton, Hazel, and Hopkins, charged him with these "retaliation felon[ies]"

based on "fabricated probable cause and withheld Brady material." Doc. 6 at 3; *see also* doc. 6-1

at 71–72.

## II.     Procedural background

In December 2025, and proceeding pro se, Stewart sued Pemiscot County, various

County officials, and Kimberly Carter under 42 U.S.C. § 1983. Doc. 1. About two weeks later,

he filed an amended complaint, but not on a court-provided form as required by Local Rule

2.06(A). *See* doc. 2. So the Court ordered Stewart to file a second amended complaint on a

court-provided form. Doc. 4. Three days later, Stewart filed his Second Amended Complaint.

Doc. 6. Several defendants filed motions to dismiss for failure to state a claim upon which the

Court can grant relief. Docs. 9, 11, 15, 24, 45. Stewart filed a response to each motion. Docs.

13, 14, 29, 30, 48. And Defendants filed separate replies. Docs. 19, 27, 34, 35. The Court

addresses each motion in turn.

## III.    Legal standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for

"failure to state a claim upon which relief can be granted." The notice pleading standard of

Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard and to survive a

Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as

5

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).  Ordinarily, the Court considers only the facts alleged in the complaint when ruling on a motion to dismiss; however, the Court may consider materials attached to the complaint in construing the complaint's sufficiency.  *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff."  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *See Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (citing *Twombly*, 550 U.S. at 562).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678–79.  "A pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement will not suffice."  *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Although courts must accept all factual

6

allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

Also, when reviewing a pro se complaint, the Court must give it the benefit of a "liberal construction," which means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  But even pro se complaints must allege facts that, if true, state a claim for relief as a matter of law.  *See Stone*, 364 F.3d at 915 (explaining that even in a pro se case, federal courts need not "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").  Liberally construing a pro se complaint also does not mean that courts should interpret the procedural rules of civil litigation "so as to excuse mistakes by those who proceed without counsel." *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679.  Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*.  This "context-specific task" requires the Court to "draw on its judicial experience and common sense." *Id*.  In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct. *Id.* at 682; *Twombly*, 550 U.S. at 567.  The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Iqbal*, 556 U.S. at 682.  The well-pleaded facts must permit more than the "mere possibility of misconduct." *Id.* at 679.  "Where a complaint pleads facts that are

'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

## IV.     Pemiscot County, Steven Horton, Gabe Hazel, Joshua Tomlin, and Jereme Lytle's Motion to Dismiss

### A.     Official-capacity claims

Stewart sues Pemiscot County and prosecutors Steven Horton and Gabe Hazel only in their official capacities.  Doc. 6 at 1.  The Court addresses each defendant in turn.

#### 1.     Pemiscot County

Section 1983 permits lawsuits against local governing bodies.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  To prevail on such a claim, Stewart must establish the governmental entity's liability for the alleged misconduct.  *See Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016).  Liability attaches where the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (citation modified); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Under *Monell*, "section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted" from an official policy or unofficial custom.  *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 699 (8th Cir. 2016) (citing *Monell*, 436 U.S. at 691).  A "official policy" refers to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Id.* at 700.  "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body."  *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).  Alternatively, an "unofficial custom" refers to:

8

> (1) the existence of a continuing, widespread, [and] persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Corwin*, 829 F.3d at 700.  Stewart needn't specifically plead the existence of an unconstitutional policy or custom.  *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).  But at a minimum, his complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists.  *Doe ex rel. Doe v. Sch. Dist.*, 340 F.3d 605, 614 (8th Cir. 2003).

In his complaint, Stewart states that "a custom, policy, and concerted conspirac[y] [exists] within Pemiscot County to misuse prosecutorial, judicial, and law-enforcement power to deprive [him] of liberty without due process and to pun[i]sh protected First Amendment activity (exposure of government misconduct)."  Doc. 6 at 4.  First, he claims that Pemiscot County prosecutors selectively enforced his violations of his Global Positioning Agreement "to protect Judge Carter's malpractice."  Doc. 6-1 at 74.  Second, he claims that Pemiscot County has a custom of weaponized prosecution.  *Id.*  Third, he claims that Pemiscot County has a custom of suppressing evidence because a letter to Judge Underwood was not docketed for three weeks.  *Id.* And lastly, Pemiscot County allegedly failed to train Defendant Hopkins, whom Stewart claims fabricated probable-cause statements in his pending felonies.  *Id.*  As explained below, Stewart fails to plausibly allege any constitutional violation stemming from any official policy or unofficial custom of Pemiscot County.

As to policy, Stewart has not shown that Pemiscot County injured him due to "a deliberate choice of a guiding principle or procedure made by [a] municipal official who has final authority regarding such matters."  *Corwin*, 829 F.3d at 700.  Even pro se complaints must

9

allege facts that, if true, state a claim for relief as a matter of law.  *See Stone*, 364 F.3d at 915.

The facts in Stewart's complaint do not sufficiently develop, or plausibly plead, whether or how

Pemiscot County violated his constitutional rights under any official policy or procedure.  *See*

doc. 6; *see also Sch. Dist. of City of Norfolk*, 340 F.3d at 614.

As to custom, Stewart failed to plausibly plead "the existence of a continuing,

widespread, [and] persistent pattern of unconstitutional misconduct by the governmental entity's

employees."  *Corwin*, 829 F.3d at 700.  He first claims that Pemiscot County prosecutors

selectively enforced his violations of his Global Positioning Agreement "to protect Judge

Carter's malpractice."  Doc. 6-1 at 74.  But prosecutors in our criminal justice system retain

"broad discretion as to whom to prosecute."  *United States v. Matter*, 818 F.2d 653, 655 (8th Cir.

1987) (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985)).  "This broad discretion rests

largely on the recognition that the decision to prosecute is particularly ill-suited to judicial

review."  *Wayte*, 470 U.S. at 607.  If "the prosecutor has probable cause to believe that the

accused committed an offense defined by statute, the decision whether or not to

prosecute . . . generally rests entirely in his discretion."  *Id.* (citation omitted).  Even the

"conscious exercise of some selectivity in enforcement does not in itself create a federal

constitutional violation."  *Matter*, 818 F.2d at 655 (citing *Oyler v. Boles*, 368 U.S. 448, 456

(1962)).  Stewart also does not plausibly allege that the Pemiscot County prosecutors' decision

not to prosecute violations of his Global Positioning Agreement was "deliberately based upon an

unjustifiable standard such as race, religion, or other arbitrary classification."  *Wayte*, 470 U.S. at

608.

Next Stewart alleges that Pemiscot County has a custom of weaponized prosecution.

Doc. 6-1 at 74.  But Stewart only asserts, conclusorily, two examples of an alleged "custom of

10

weaponized prosecution," *id.* (stating that the County "[u]sed the illegal GPS as leverage in unrelated cases (2019 bad check threat, 2021 motion denial)"), hardly enough to plausibly establish "the existence of a continuing, widespread, [and] persistent pattern of unconstitutional misconduct by [Pemiscot County] employees," *see Corwin*, 829 F.3d at 700 (holding that an isolated incident of alleged misconduct cannot establish *Monell* liability).

And even if Stewart's two threadbare examples of alleged malicious prosecutions sufficed to establish a "continuing, widespread, [and] persistent pattern" of misconduct by Pemiscot County employees, *see id.*, the "general rule is that an action for malicious prosecution does not state a claim of constitutional injury." *Tech. Ordnance, Inc. v. United States*, 244 F.3d 641, 650 (8th Cir. 2001). "It is well established in this circuit that an action for malicious prosecution by itself is not punishable under [42 U.S.C.] § 1983 because it does not allege a constitutional injury." *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) (cleaned up).

Third, Stewart claims that Pemiscot County has a custom of suppressing evidence because a letter to Judge Underwood was not docketed for "more than three weeks and counting." Doc. 6-1 at 74. The Court finds this argument frivolous. *Sumner v. Mata*, 449 U.S. 539, 548 (1981) ("Undoubtedly, a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit."). Even if the Court assumed that Stewart (i) asserts a *Brady* violation, *see* doc. 6-1 at 74, and (ii) that he can allege a *Brady* violation against a court clerk, a clerk's alleged failure to docket a single letter to a judge doesn't plausibly allege that the County has a custom of willful suppression of evidence. *See United States v. Beckman*, 787 F.3d 466, 492 (8th Cir. 2015) (stating that to prove a *Brady* violation, the plaintiff

11

must show that the prosecution knowingly suppressed material evidence favorable to him and its disclosure would have altered the proceeding's result).

Finally, Stewart alleges that Pemiscot County failed to train or supervise Defendant Hopkins, whom Stewart claims fabricated probable cause in his pending felonies.  Doc. 6-1 at 74.  Stewart can assert a *Monell* claim by plausibly pleading a deliberately indifferent failure to train or supervise.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference").

To show deliberate indifference, Stewart must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005).  Stewart must also allege a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).  Here, however, Stewart neither plausibly alleges that Pemiscot County had notice that its procedures were inadequate and likely to result in a constitutional rights violation nor that a similar pattern of constitutional violations by untrained employees existed. *See generally* docs. 6, 6-1.  A bare allegation of two incidents of alleged prosecutorial misconduct doesn't approach this threshold.  The Court therefore finds that Stewart fails to state a claim against Pemiscot County upon which the Court can grant relief. *See Iqbal*, 556 U.S. at 678.

### 2.      Prosecutors Steven Horton and Gabe Hazel

Stewart sues prosecutors Horton and Hazel in their respective official capacities.  Doc. 6 at 1.  He asserts again that Horton and Hazel selectively enforced his violations of his Global

Positioning Agreement "to prevent public exposure of the unlawful order and Judge Carter's role in creating it." *Id.* at 3.

But "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). So his claims against Horton and Hazel are claims against Pemiscot County. *See Crawford v. Van Buren Cnty., Ark.*, 678 F.3d 666, 669 (8th Cir. 2012). And as discussed, the facts in Stewart's complaint do not sufficiently or plausibly develop the issue of whether Pemiscot County violated his constitutional rights under any official policy or procedure. *See generally* doc. 6; *see Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 953–54 (8th Cir. 2024); *see also Sch. Dist. of City of Norfolk*, 340 F.3d at 614. And again, Stewart does not plausibly allege that Horton and Hazel's decision not to prosecute was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Wayte*, 470 U.S. at 607. Stewart therefore fails to state a claim against Pemiscot County upon which the Court can grant relief. *See Iqbal*, 556 U.S. at 678.

## B.    Individual-capacity claims

### 1.    Prosecutors Joshua Tomlin and Jereme Lytle

Stewart sues prosecutors Joshua Tomlin and Jereme Lytle only in their individual capacities. Doc. 6 at 1. Stewart first alleges that Tomlin and Lytle "received repeated violation reports yet deliberately declined to prosecute-a tacit policy of non-enforcement designed to prevent public exposure of the unlawful order and Judge Carter's role in creating it." *Id.* at 3. He alleges that this violated the Fourteenth Amendment's Equal Protection Clause. Doc. 6-1 at

13

82, 83.  Stewart also alleges that Tomlin "knew the GPS invalidity" thus constituting a *Brady* violation.  *Id.* at 82.

But as stated above, prosecutors in our criminal justice system retain "broad discretion as to whom to prosecute."  *Matter*, 818 F.2d at 654 (citing *Wayte*, 470 U.S. at 607.  Even the "conscious exercise of some selectivity in enforcement does not in itself create a federal constitutional violation."  *Id.* (citing *Oyler*, 368 U.S. at 456).  And Stewart does not plausibly allege that the Pemiscot County prosecutors' decision not to prosecute was "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."  *Wayte*, 470 U.S. at 608.  Second, "[p]rosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law."  *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016).  Even "allegations of improper motive in the performance of prosecutorial functions will not defeat its protection."  *Id.*

Further, to prove a *Brady* violation, Stewart must show that the Tomlin knowingly suppressed material evidence favorable to Stewart and its disclosure would have altered the proceeding's result.  *Beckman*, 787 F.3d at 492.  But Tomlin wasn't the prosecutor when Stewart entered his plea deal.  Doc. 6-1 at 2–3 (showing that the prosecuting attorney was Michael Hazel).  Stewart fails to allege that Tomlin knew that the GPS unit was not part of the plea agreement, and if he did know, how its disclosure would have prevented Stewart from entering the plea and separately signing the Global Positioning Agreement.  *See* doc. 1 at 2; doc. 6-1 at 7 (Global Positioning Agreement).  The Court cannot supply Stewart with unpleaded facts.  *See Stone*, 364 F.3d at 915.

Stewart also claims that Tomlin and Lytle engaged in unethical behavior under the Missouri Rules of Professional Conduct.  Doc. 6-1 at 82, 83.  And that Lytle engaged in witness

14

tampering under Mo. Rev. Stat. § 575.270. *Id.* at 83. First, violations of state law—let alone ethical violations—do not state a claim under 42 U.S.C. § 1983. *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 965 (8th Cir. 2015). And Stewart does not plausibly allege that Tomlin or Lytle engaged in either of these activities. *See generally* doc. 6. Again, the Court declines to supply facts not plausibly alleged by Stewart. *See Stone*, 364 F.3d at 915. The Court therefore grants Pemiscot County, Steven Horton, Gabe Hazel, Joshua Tomlin, and Jereme Lytle's Motion to Dismiss. Doc. 11.

## V.   Judge Carter, Judge Underwood, Judge Copeland, and Libby Bank's Motion to Dismiss

Stewart sues Judge Carter, Judge Underwood, Judge Copeland, and Libby Banks only in their official capacities. Doc. 6 at 1, 3–4. The Court notes that the parties agree that Stewart's claims against these officials are suits against state officials. Doc. 10 at 3–6; doc. 13 at 1–4; doc. 19 at 1–6. And "[s]uits against state officials in their official capacity" are "treated as suits against the [s]tate." *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Veatch*, 627 F.3d at 1257 (stating that official-capacity suits are "functionally equivalent to a suit against the employing governmental entity").

And the Eleventh Amendment confers Missouri with immunity from suit. *Edelman v. Jordan*, 415 U.S. 651, 660–63 (1974). Though Congress may statutorily abrogate such immunity and Missouri may waive its immunity, neither exception applies here. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 67–68 (1989) (concluding that § 1983 did not abrogate a state's immunity); *see also* Mo. Rev. Stat. § 537.600.1 (explaining that sovereign immunity is in effect except for a few inapplicable instances). The Eleventh Amendment bars Stewart from seeking compensatory damages and punitive damages for his alleged injuries. Doc. 6 at 5; *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) ("Money damages are unrecoverable against

[defendant] in his official capacity under *Edelman*, as such an award would require an expenditure of state funds.").

Stewart also seeks attorney fees pursuant to 42 U.S.C. § 1988.  Doc. 6 at 4.  But Stewart cannot recover because he is not a prevailing party.  42 U.S.C. § 1988(b).  And while the Eleventh Amendment doesn't bar an award of attorneys' fees "ancillary to prospective relief," *Jensen v. Clarke*, 94 F.3d 1191, 1201 (8th Cir. 1996), self-represented litigants cannot recover attorneys' fees, *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) ("The Circuits are in agreement . . .  that a pro se litigant who is *not* a lawyer is *not* entitled to attorney's fees.").

Finally, Stewart seeks a permanent injunction to dismiss "all pending [state] felony charges and expunge[] records," and a declaratory judgment that "Defendants violated Plaintif's [sic] constitutional rights."  Doc. 6 at 4.  But Courts may not enjoin pending state criminal proceedings absent "extraordinary circumstances," *Younger v. Harris*, 401 U.S. 37, 45 (1971), such as a "bad-faith prosecution or when a criminal statute is 'flagrantly and patently unconstitutional on its face,'" *Wassef v. Tibben*, 68 F.4th 1083, 1086–1087 (8th Cir. 2023) (citing *Younger*, 401 U.S. at 53–54).

Stewart's complaint fails to plausibly plead that his subsequent felony prosecutions were conducted in bad faith; they appear to result solely from his own alleged conduct.  *See generally* docs. 6, 6-1.  Stewart didn't wear his Global Positioning Unit.  Doc. 6-1 at 26.  He allegedly sold a single cabin—that he did not own—to two separate individuals.  Probable Cause Statement, *Missouri v. Stewart*, 23PE-CR00726 (Sept. 12, 2023).  And he allegedly fled from an officer at a "high rate of speed."  Probable Cause Statement, *Missouri v. Stewart*, 24PE-CR00173 (Mar. 19, 2024).  Because Stewart failed to plausibly plead that "extraordinary circumstances" exist, the

16

Court declines to enjoin two separate pending state criminal proceedings. *Younger*, 401 U.S. at 45; *see also Stone*, 364 F.3d at 915.

For the same reasons, Stewart fails to state a claim for a declaratory judgment. *Samuels v. Mackell*, 401 U.S. 66, 73 (1971) ("[T]he basic policy against federal interference with pending state criminal prosecutions will be frustrated as much by a declaratory judgment as it would be by an injunction."); *Bolinske v. N. Dakota Supreme Ct.*, 823 F. App'x 444, 447 (8th Cir. 2020) (stating that *Younger* Abstention "applies to claims for both injunctive and declaratory relief"). Because Stewart fails to state a claim upon which the Court can grant relief, Fed. R. Civ. P. 12(b)(6), the Court grants Judge Carter, Judge Underwood, Judge Copeland, and Libby Bank's Motion to Dismiss. Doc. 9.

## VI.   Kimberly Carter's Motion to Dismiss

Stewart sues Kimberly Carter both in an individual and official capacity. Doc. 6 at 1. Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) (citation modified). But "in certain circumstances the government may become so entangled in private conduct that the deed of an ostensibly private organization or individual is to be treated as if a State had caused it to be performed." *Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 422 (8th Cir. 2007) (citation modified).

The relevant question is whether "the alleged infringement of federal rights [is] fairly attributable to the State." *Id.* (alteration in original) (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982)). Meaning, "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly

17

treated as that of the State itself." *Id.* (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

But fatal to Stewart's claim:  he does not allege that Kimberly Carter engaged in any alleged infringement of his federal rights.  *See* doc. 6 at 3, 6-1 at 76l *see also* doc. 30.  Rather, Stewart alleges that Kimberly Carter and Judge Carter engaged in unethical behavior to get his criminal conviction vacated.  *See* doc. 6-1 at 28, 30, 76.  But again, violations of state law—and by extension, ethical violations—do not state a claim under 42 U.S.C. § 1983.  *Stevenson*, 800 F.3d at 965.  The Court therefore grants Kimberly Carter's Motion to Dismiss.  Doc. 15.

## VII.   Missouri Board of Probation and Parole's Motion to Dismiss

Stewart sues the Missouri Board of Probation and Parole in an official capacity.  Doc. 6 at 1.  But the Missouri Board of Probation and Parole is a division of the Missouri Department of Corrections—a state agency.  Doc. 25 at 4 n.2; *see also* Mo. Rev. Stat. § 217.015.2(3).  The Eleventh Amendment bars suits against the state "for any kind of relief" whether monetary or injunctive.  *See Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007).  The Court therefore grants Missouri Board of Probation and Parole's Motion to Dismiss.  Doc. 24.

## VIII.   Brett Hopkins and Michael Hazel's Motion to Dismiss

Lastly, Stewart sues Hopkins, in his official capacity, doc. 6 at 1–2, and Hazel, in an individual capacity, *id.* at 1.  The Court addresses each defendant in turn.

### 1.   Brett Hopkins

Stewart sues Hopkins only in an official capacity.  Doc. 6 at 1–2.  But "[a] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."  *Veatch*, 627 F.3d at 1257.  His claims against Hopkins are therefore claims against Pemiscot County.  *Crawford*, 678 F.3d at 669.

18

Stewart claims that Hopkins fabricated the probable-cause statements in his pending criminal cases.  Doc. 6 at 3–4; *see also* Probable Cause Statement, 23PE-CR00726, *Missouri v. Stewart* (Sept. 12, 2023); Probable Cause Statement, 24PE-CR00173, *Missouri v. Stewart*, (Mar. 19, 2024).  But while the "factual showing sufficient to comprise 'probable cause'" must be "truthful[,]" it does not mean that the statement is "necessarily correct[.]"  *See Franks v. Delaware*, 438 U.S. 154, 164–165 (1978).  "[P]robable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily."  *Id.* at 165.  Hopkins's probable-cause statement needed to be "truthful" only "in the sense that the information put forth is believed or appropriately accepted by [Hopkins] as true."  *Id.*

In Hopkins's first probable-cause statement, he stated that Stewart sold a single cabin— that he allegedly did not own—to two separate individuals.  Probable Cause Statement, 23PE-CR00726, *Missouri v. Stewart* (Sept. 12, 2023).  But Stewart asserts that "Hopkins intentionally omitted [his] wife's identity . . . . [and Hopkins] knew the owner of the sold property and knew the owner was my wife, thus marritial [sic] property giving me full own[er]ship stake and right to sell."  Doc. 6-1 at 64; *see also id.* at 71.  Stewart appears to refer to Hopkins's statement that "[d]uring my investigation I made contact with a female resident of 209 S Second St who stated that the 12X36 foot side lofted cabin unit belonged to her and not Michael Stewart."  Probable Cause Statement, 23PE-CR00726, *Missouri v. Stewart* (Sept. 12, 2023).  Hopkins made this statement on the belief that "the facts contained herein are true" and "knowing that false statements on this form are punishable by law[.]"  *Id.*  Stewart fails to plausibly assert Hopkins's probable-cause statement was not "truthful."  *See Franks*, 438 U.S. at 164–65.

19

In Hopkins's second probable-cause statement, he stated that while on patrol he encountered a parked vehicle that was operated by Stewart. Probable Cause Statement, 24PE-CR00173, *Missouri v. Stewart*, (Mar. 19, 2024). To execute an outstanding felony warrant, Hopkins circled the block and got behind the vehicle. *Id.* At that point, Stewart allegedly fled at a "high rate of speed." *Id.* Eventually, Stewart came to a stop and fled on foot. *Id.* Stewart's wife was in the vehicle and confirmed that Stewart operated the vehicle. *Id.*

Stewart states that his public defendant refused to let Stewart view "any body[-]cam footage obtained by the prosecution" from the incident because, according to Stewart, "he was not on the body[-] cam footage." Doc. 6-1 at 72. But whether Stewart was identifiable on Hopkins's body-came footage has no relevance to whether Hopkins's probable-cause statement was "truthful." *See Franks*, 438 U.S. at 164–65. Stewart fails to plausibly plead that Hopkins's probable-cause statement was not "truthful." *See id.*

In sum, Stewart failed to plausibly allege that Hopkins violated Stewart's constitutional rights—let alone that a constitutional violation stemmed "from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick*, 883 F.3d 1075, 1079 (8th Cir. 2018) (citation modified); *see also*, *supra* Part IV.A.1. Stewart therefore fails to state a claim against Hopkins or Pemiscot County upon which the Court can grant relief. *See Iqbal*, 556 U.S. at 678.

### 2.    Michael Hazel

Stewart sues Hazel only in an individual capacity. Doc. 6 at 2. Stewart alleges that "[a]ll injuries stem from a 2009 due process violation . . . [where] Prosecuting Attorney Michael Hazel withheld mandatory lifetime GPS terms from my statutory rape plea as a 17[-]year old, subjecting me to fifteen years of wrongful Missouri Sex Offender Registration." *Id.* at 4. But

20

absent a plea obtained from an incompetent individual or through torture, prosecutors are entitled to "absolute immunity" for due-process claims arising out of plea-bargaining context. *Hayden v. Nevada Cnty.*, 664 F.3d 770, 772–73 (8th Cir. 2012). The Court therefore grants Brett Hopkins and Michael Hazel's Motion to Dismiss. Doc. 45.

IX.    **Conclusion**

Accordingly, the Court grants Defendants' [9] [11] [15] [24] [45] motions to dismiss this case with prejudice. A separate order of dismissal accompanies this Memorandum and Order.

So ordered this 27th day of July 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE